STATE OF NEBRASKA, APPELLEE, V. BERNARD L. WOLF, APPELLANT.

549 N.W.2d 183

Filed June 21, 1996. No. S-95-478.

Chris M. Arps for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

This is an appeal from an order denying a plea in bar. Bernard L. Wolf contends that his prosecution for possession of a controlled substance under Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1994), is barred by the Double Jeopardy Clauses to the federal Constitution's Fifth Amendment and art. I, § 12, of the Nebraska Constitution. We affirm.

## BACKGROUND

By his own admission, Bernard L. Wolf has suffered from an addiction to prescription drugs since his teenage years. For reasons perhaps more opportunistic than prudent, Wolf chose pharmacy as his career and began working at Midlands Community Hospital after securing from the State his license to practice pharmacy. Wolf's actions in his capacity as a state-licensed pharmacist first came under scrutiny in July 1994, when the Nebraska Department of Health Investigations Division instigated an investigation of missing cocaine, narcotics, barbiturates, and tranquilizers, including triazolam and alprazolam. Triazolam and alprazolam are among the controlled substances enumerated in Neb. Rev. Stat. § 28-405 (Cum. Supps. 1992 & 1994); the drugs are better known by their respective trade names, Halcion and Xanax.

The Department of Health eventually traced the missing substances to Wolf. On August 30, 1994, Wolf admitted in an interview with a Department of Health investigator to diverting an assortment of drugs from the hospital pharmacy for his personal edification and without a prescription for the 6 to 9 months preceding the interview. Wolf stated that he had most recently taken drugs from the pharmacy in the first week of August 1994, that he had ingested Halcion and Xanax at that time, and that he was addicted to prescription drugs and alcohol.

The Department of Health supplied its findings, including its interview with Wolf, to the offices of the Nebraska Attorney General and the Sarpy County Attorney. The Attorney General filed a petition for disciplinary action against Wolf before the director of the Department of Health. This petition alleged that (1) Wolf had an active dependency on or addiction to controlled substances or narcotic drugs, (2) Wolf knowingly or intentionally acquired or attempted to acquire possession of controlled substances by theft and knowingly or intentionally possessed controlled substances when he was not authorized to do so in violation of § 28-416 and Neb. Rev. Stat. § 28-418 (Reissue 1995), and (3) Wolf's actions constituted dishonorable conduct evidencing unfitness. The petition stated that Wolf's actions constituted grounds for disciplinary action pursuant to Neb. Rev. Stat. § 71-147(17) (Cum. Supp. 1994), and prayed for relief under any or all of the provisions of Neb. Rev. Stat. § 71-155 (Cum. Supp. 1994).

The record does not indicate the date of filing of the Attorney General's petition against Wolf, nor does the record indicate what, if anything, transpired between the filing of the petition and the ultimate conclusion of the proceeding. At any rate, the proceedings before the director of the Department of Health concluded on December 9, 1994, when Wolf entered into a settlement agreement with the Attorney General. As a condition of the agreement, Wolf elected not to contest most of the Attorney General's allegations and further admitted to the allegation concerning his active dependency on or addiction to the use of controlled substances and alcohol. Wolf agreed to pursue a new career other than in pharmacy and agreed that his license could be revoked.

On February 23, 1995, the Sarpy County Attorney filed an information in the district court, charging Wolf with one count of knowingly and intentionally possessing Halcion, in violation of § 28-416(3), between May 1 and August 30, 1994, and one count of knowingly and intentionally possessing Xanax, in violation of § 28-416(3), during the same period. Wolf filed a plea in bar, alleging that the criminal charges against him violated constitutional prohibitions against being twice put in jeopardy for the same offense. The district court overruled

Wolf's plea, and Wolf appealed; we granted the State's petition to bypass the Nebraska Court of Appeals for immediate review of this issue of first impression.

Wolf assigns one error: The district court for Sarpy County erred in denying his plea in bar. An issue regarding the denial of a plea in bar is a question of law. *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996). Our resolution of this issue turns on whether the proceedings before the director of the Department of Health resulted in "punishment" as it is defined by the U.S. Supreme Court for double jeopardy purposes.

## DOUBLE JEOPARDY AND CIVIL
## PENALTIES IN NEBRASKA

The Double Jeopardy Clause protects against three abuses of the criminal justice system: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). Wolf alleges that he was subjected to multiple punishments for the same offense, i.e., the possibility of a $10,000 fine in the civil proceeding subjected him to "punishment" in the first proceeding and that, therefore, the subsequent criminal prosecution necessitates multiple defenses for the same underlying offense. The validity of Wolf's allegations, thus, turns on whether Wolf faced punishment in the civil proceeding before the director of the Department of Health.

The seminal case on double jeopardy implications of civil proceedings is *Halper, supra*. In *Halper*, the U.S. Supreme Court invalidated a $130,000 penalty imposed under the civil False Claims Act, 31 U.S.C. §§ 3729 to 3731 (1982 & Supp. III 1985). The defendant already had been convicted of violating the criminal false claims statute and sentenced to 2 years' imprisonment and fined $5,000. On appeal, the defendant argued that the $130,000 penalty, despite its genesis in a civil proceeding, constituted a second punishment for a single offense. The Supreme Court agreed, finding that

> [w]here a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent

proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

490 U.S. at 449-50. Under *Halper*, when a civil penalty has only a deterrent purpose and is devoid of any remedial purpose, that penalty is "punishment" in substance, regardless of the fact that it is civil in name.

This court first defined the punitive limits of civil penalties under *Halper* in *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996), *cert. denied* No. 95-8782, 1996 WL 226750 (U.S. June 10, 1996). *Hansen* arose from a double jeopardy challenge to Nebraska's administrative license revocation (ALR) scheme, wherein persons arrested for driving under the influence of alcohol face driver's license revocation by the Nebraska Department of Motor Vehicles in addition to criminal punishment. Despite Hansen's claim that ALR appeared to qualify as punishment, we found that a civil sanction rises to the level of "punishment" when it " 'may not fairly be characterized as remedial, but *only* as a deterrent or retribution.' " *Id.* at 185, 542 N.W.2d at 430.

Under *Hansen*, the fact that a statute designed primarily to serve remedial purposes secondarily serves the exemplary purpose of general deterrence as well precludes a finding that the statute results in punishment for double jeopardy purposes. This reasoning validated the ALR scheme, whose provisions, taken as a whole, serve primarily a remedial purpose of protecting Nebraskans from drunk drivers while also serving an exemplary purpose of deterring motorists from driving drunk. As Nebraska's ALR scheme does not serve primarily a deterrent or retributive purpose, ALR does not trigger Double Jeopardy Clause protections. Our task in this case is to determine whether the same can be said of the statutes under which Wolf was prosecuted.

## DOUBLE JEOPARDY IMPLICATIONS OF
## PROFESSIONAL LICENSE REVOCATION

In the proceedings before the director of the Department of Health, Wolf faced penalties listed in § 71-155, which enables the Director of Health "to exercise in his or her discretion any or all of the following powers":

(1) Issue a censure or reprimand against the licensee, certificate holder, or registrant;

(2) Suspend judgment;

(3) Place the licensee, certificate holder, or registrant on probation;

(4) Place a limitation or limitations on the license, certificate, or registration and upon the right of the licensee, certificate holder, or registrant to practice the profession to such extent, scope, or type of practice, for such time, and under such conditions as are found necessary and proper;

(5) Impose a civil penalty not to exceed ten thousand dollars. The amount of the penalty shall be based on the severity of the violation;

(6) Enter an order of suspension of the license, certificate, or registration;

(7) Enter an order of revocation of the license, certificate, or registration; and

(8) Dismiss the action.

Wolf contends that the provisions of § 71-155 constitute "punishment," such that the attempt to subsequently prosecute him criminally results in an impermissible attempt to punish him twice for the same offense.

The revocation or suspension of a professional license generally does not constitute "punishment" for the purposes of double jeopardy analysis. See *Hansen, supra* (noting that some other courts have found that professional license revocation serves remedial purpose of protecting public from unfit practitioners). Our analysis cannot end at this point, however, because § 71-155 threatens not only remedial penalties of license revocation, but also "a civil penalty not to exceed ten thousand dollars." § 71-155(5). Wolf argues that the $10,000 fine constitutes punishment and that, therefore, because the

proceeding before the Department of Health *could* have resulted in the imposition of punishment, he is being subjected to multiple punishments for the same offense.

Under *State v. Hansen*, 249 Neb. 177, 185, 542 N.W.2d 424, 430 (1996), *cert. denied* No. 95-8782, 1996 WL 226750 (U.S. June 10, 1996), a penalty must bear a rational relation to the costs to government of the violation and must not appear "to qualify as 'punishment' in the plain meaning of the word." (Quoting *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989)). The amount of a civil penalty need not equal the exact amount of damages caused to the government, as the government is entitled to "rough justice." 490 U.S. at 449. However, where a civil penalty "does not remotely approximate the Government's damages and actual costs . . . rough justice becomes clear injustice." 490 U.S. at 446. Were it clear that the possible $10,000 fine provided for in § 71-155 lacked any remedial purpose and did not "remotely approximate the Government's . . . costs," then this court could find that indeed Wolf was subject to punishment. However, we conclude that Wolf was not "punished" in the first proceeding as no fine was actually imposed.

While a $10,000 fine imposed under § 71-155 may well serve a punitive purpose in certain cases, this court will not assume in a vacuum that a potential fine not actually imposed could serve only primarily punitive purposes as applied against Wolf. In fact, the fine, if imposed, might have merely compensated the State for its approximate investigative or prosecutorial expenses. Such expenses might well increase according to the severity of the violation or the deceptiveness of the violator during the investigation, and a fine that recoups some of these costs for the State would assume remedial qualities.

As stated in *Halper*, "a civil remedy does not rise to the level of 'punishment' merely because Congress provided for civil recovery in excess of the Government's actual damages . . . ." 490 U.S. at 442. Rather the analysis of the court must focus on "whether a civil sanction, *in application*, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." (Emphasis

supplied.) 490 U.S. at 443. The Double Jeopardy Clause's prohibition against multiple punishment is "intrinsically personal. Its violation can be identified only by assessing the character of *the actual sanctions imposed on the individual* by the machinery of the state." (Emphasis supplied.) 490 U.S. at 447. Finally, "a civil as well as a criminal sanction constitutes punishment when the sanction *as applied* in the individual case serves the goals of punishment." (Emphasis supplied.) 490 U.S. at 448. See, also, *Hansen, supra* (making particularized assessment of penalty actually imposed to determine if it constitutes "punishment" for purposes of double jeopardy).

Thus, the mere existence of a potential civil statutory sanction itself does not qualify as punishment under a *Halper* analysis. Rather, our analysis must focus on whether a civil sanction, in application, constitutes "punishment." It necessarily follows that a civil sanction must be imposed in order to make an assessment of whether that *particular* sanction, in its application, constitutes punishment for the purpose of a double jeopardy analysis. See *Halper, supra.*

In *Kvitka v. Board of Registration in Medicine*, 407 Mass. 140, 551 N.E.2d 915 (1990), *cert. denied* 498 U.S. 823, 111 S. Ct. 74, 112 L. Ed. 2d 47, the Supreme Judicial Court of Massachusetts considered the validity of a statute similar in pertinent part to § 71-155. The appellant in that case had pled guilty to 10 counts of unlawfully dispensing controlled substances and was sentenced to a suspended prison sentence and a $60,000 fine; thereafter, the Board of Registration in Medicine revoked the appellant's license to practice medicine and imposed an additional civil penalty of $10,000. The appellant brought a double jeopardy challenge to only the $10,000 civil penalty and did not contest the validity of the license revocation. While the court in *Kvitka* determined that the medical board had statutory authority to order the $10,000 fine by virtue of the disciplinary statute, the court determined that consideration of the double jeopardy claim was necessary because of the $60,000 fine imposed on the defendant in the preceding criminal case.

The *Kvitka* court invalidated the imposition of the $10,000 fine, holding that it could not survive in light of *Halper*'s pro-

scription of retribution and deterrence in nonpunitive govern-
mental objectives. This conclusion was based on a particular-
ized assessment of the motivations behind the actual imposi-
tion of the $10,000 civil penalty in *Kvitka*. Significantly, there
was no indication in the record or in the text of the statute that
the purpose of the $10,000 fine was remedial. Moreover, the
Board of Registration in Medicine made clear its intent to pun-
ish the physician by imposing its $10,000 fine through its
statement that " 'misconduct in the area of prescription prac-
tice will not be treated lightly.' " 407 Mass. at 145, 551
N.Ed.2d at 918. Therefore, because Kvitka had been previ-
ously criminally punished, the subsequent imposition of the
civil penalty for punitive purposes was disallowed as violative
of the Double Jeopardy Clause.

The difference between *Kvitka* and this case is that in the
instant case, there was no fine or criminal-like sanction
imposed in the first proceeding. While it makes no difference
that the proceedings in *Kvitka* and this case are reversed in
order, i.e., in *Kvitka*, there was a criminal prosecution first
and a civil proceeding second, while here, there was a civil
proceeding first and an attempted criminal prosecution second,
it does make a difference that, unlike *Kvitka*, no fine was
imposed in this case in the first proceeding. See *Kvitka*, 407
Mass. at 145, 551 N.E.2d at 918 (stating that " 'the determi-
nation whether a given civil sanction constitutes punishment in
the relevant sense requires a particularized assessment of the
penalty imposed' " and then proceeded to make such assess-
ment). The facts in the instant case are clearly distinguishable
from *Kvitka*.

Because the proceedings against Wolf before the director of
the Department of Health did not result in punishment within
the meaning of *Halper* and *Hansen*, we find that the district
court ruled correctly in denying Wolf's plea in bar.

AFFIRMED.

WHITE, C.J., dissenting.

The majority distinguishes this case from *Kvitka v. Board of
Registration in Medicine*, 407 Mass. 140, 551 N.E.2d 915
(1990), *cert. denied* 498 U.S. 823, 111 S. Ct. 74, 112 L. Ed.
2d 47, by stating that "there was no indication in the record

or in the text of the statute that the purpose of the $10,000 fine was remedial," and by finding that the board of registration "made clear its intent to punish the physician by imposing its $10,000 fine" through its statement of intolerance for professional misconduct. These factors do not counsel in favor of distinction. Neither the record nor the text of Neb. Rev. Stat. § 71-155 (Cum. Supp. 1994) indicates any remedial purpose behind the $10,000 fine, and, in fact, the text of the statute is as telling as the *Kvitka* board's statement that a punitive purpose underlies the fines in both cases.

The text of the provision for the $10,000 fine in § 71-155 reads as follows:

> Upon the completion of any hearing held under this section, the director shall have the authority through entry of an order to exercise in his or her discretion any or all of the following powers, irrespective of the petition:
>
> . . . .
>
> (5) Impose a civil penalty not to exceed ten thousand dollars. The amount of the penalty shall be based on the severity of the violation.

The text of this provision does not specify any mechanism for applying the windfall of the $10,000 fine to expenses of any sort. In fact, nowhere in the text of this provision does the Legislature indicate that the fine is meant to compensate, as the majority theorizes, for "investigative or prosecutorial expenses." The text ties the imposition and amount of the fine to one and only one factor: the severity of the offense. There is no "rational relation" between the provision for the fine and any ostensible costs to society as required by *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), and the statute in fact makes no provision whatsoever for even establishing costs to society.

The inclusion of a $10,000 fine in this otherwise remedial statute is analogous to a provision that would allow the Nebraska Department of Motor Vehicles to fine a driver $10,000 under Nebraska's administrative license revocation statutes: the fine substantially changes the character of the statute and calls into question its ostensibly remedial purpose.

The *Kvitka* court acknowledged the gap between "remedial" and "punitive" that impugns § 71-155 in this case:

> This is not a case where the government itself has suffered a loss because of the physician's fraud, cf. *United States v. Halper, supra,* or where there is an identifiable victim who has suffered damages due to the physician's actions. The only remedial aspect of the fine in this case would have been to reimburse the board for the expenses in handling the administrative matter against the physician. But the board, in its decision, did not base the fine on its administrative expenses.

407 Mass. at 146, 551 N.E. 2d at 918-19. The same can be said of the $10,000 fine with which Wolf was threatened in this case.

Under the U.S. Supreme Court's decision in *Halper* and this court's decision in *State v. Hansen,* 249 Neb. 177, 542 N.W.2d 424 (1996), *cert. denied* No. 95-8782, 1996 WL 226750 (U.S. June 10, 1996), a civil penalty must bear a "rational relation" to the costs to society of the violation and must not appear "to qualify as 'punishment' in the plain meaning of the word." 249 Neb. at 185, 542 N.W.2d at 430 (quoting *Halper, supra*). The provision for a $10,000 fine cannot pass muster under this standard. Even the State has not tried to defend the fine as remedial in nature. It is difficult to fathom how this penalty addresses the cost to society of Wolf's misconduct, except in the sense that the threat of its imposition serves as both a specific and a general deterrent—and under *Halper* and *Hansen,* when a sanction "may not fairly be characterized as remedial, but *only* as a deterrent or retribution," the sanction constitutes "punishment," 249 Neb. at 185, 542 N.W.2d at 430 (quoting *Halper, supra*), and thereby triggers double jeopardy protections.

As in *Halper,* there is no logical connection between this fine and the goal of remedying the cost to the State or society created by Wolf's misconduct. The absence of such a quantification leads me to conclude that the provision in § 71-155 for a $10,000 fine is, unlike license revocation, not rationally related to the goal of making society whole. See, e.g., *Halper, supra.* When the purpose of a statutory provision cannot fairly

be characterized as remedial, but only as a deterrent or retribution, and when a citizen is subject to the full force of that statute, then the citizen is subject to "punishment" within the meaning of *Halper* and *Hansen*.

Indeed, the State conceded at oral argument that the $10,000 fine has no remedial purpose. Its only defense of the fine was the fact that Wolf was not actually subjected to the $10,000 fine when the settlement agreement was finalized at the conclusion of the proceedings before the director of the Nebraska Department of Health. In response to this court's questions, the State asserted—and the majority agrees today— that we need be concerned only with the sanction actually imposed and not with the sanctions Wolf faced before the director of the Department of Health passed judgment. This assertion, however, conflicts with the U.S. Supreme Court's interpretation of the text of the Fifth Amendment.

In confining its analysis to exclusively whether Wolf was actually punished twice, the majority opinion overlooks other prohibitions of the Double Jeopardy Clause. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be *twice put in jeopardy* of life or limb." (Emphasis supplied.) U.S. Const. amend. V. The U.S. Supreme Court has explained that " 'the Clause serves the function of preventing both successive punishment and successive prosecution,' " *Witte v. U.S.*, ____ U.S. ____, 115 S. Ct. 2199, 2204, 132 L. Ed. 2d 351 (1995), and that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it," *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 173, 21 L. Ed. 872 (1874).

The language of the Double Jeopardy Clause thus protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. *Witte v. U.S., supra*; *Price v. Georgia*, 398 U.S. 323, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970). In *Price*, the petitioner challenged efforts by the state to convict him for murder after his conviction for a lesser-included offense had been reversed on appeal. The Supreme Court, in finding that the petitioner

could not be retried for the greater-included offense, held that the Double Jeopardy Clause "is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict." 398 U.S. at 331. Whether he is convicted, acquitted, or convicted of a lesser offense than that with which he was originally charged, an accused is equally put in jeopardy the first time he faces punishment by the state. See *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896).

The Supreme Court has found that a tribunal whose purpose is essentially remedial can hold proceedings which are essentially criminal, thus triggering Double Jeopardy Clause protections. In *Breed v. Jones*, 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975), the Court heard the appeal of a minor who had been tried as an adult in state court following a juvenile court adjudicatory finding that he had violated a criminal statute, and a subsequent finding that he was unfit for treatment as a juvenile and would not be punished or otherwise sanctioned by the juvenile court. The minor argued that he was placed in former jeopardy at the juvenile court adjudicatory hearing, whose object was to determine whether he had committed acts that violated a criminal law and whose potential consequences included both the stigma inherent in that determination and the deprivation of liberty.

The Supreme Court agreed and vacated the minor's state court conviction, holding that even if the state were correct in asserting that the minor faced only one punishment, the Double Jeopardy Clause is violated when an accused twice faces the risk of trial and conviction: "Jeopardy denotes risk." 421 U.S. at 528. The state had contended that the genesis of the juvenile court system was in the need to provide a distinct procedure and setting to rehabilitate troubled youths, rather than to punish criminally, and that as such the policies prohibiting double jeopardy were unconcerned. The truth of this contention, however, did not answer whether the minor was placed in former jeopardy, given the gap that had grown "between the originally benign conception of the system and its realities." 421 U.S. at 528.

Regardless of the type of proceeding, the minor in *Breed* was subjected to the burden of two trials for the same offense, was twice put to the task of marshaling his resources against those of the state, and was twice subjected to the " 'heavy personal strain' which such an experience represents"—all in violation of the letter and spirit of the Double Jeopardy Clause. 421 U.S. at 533. That emphasis on the substance of a proceeding, rather than on the form, is consistent with the Supreme Court's later decision in *Halper*, that relying on "civil" or "criminal" labels is not the dispositive means to ascertain whether a penalty is punishment. If one may be punished in a civil proceeding under *Halper*, then jeopardy must attach in a proceeding where one faces the risk of punishment by the state, even if the proceeding is civil by legal taxonomy.

In this case, the complaint against Wolf included violations of criminal laws prohibiting possession of a controlled substance, and the findings of fact on those issues at the Department of Health proceedings could be considered probative in the subsequent criminal prosecution under Neb. Rev. Stat. § 28-416 (Cum. Supp. 1994). In affirming the denial of Wolf's plea in bar, the majority subjects Wolf, like the minor in *Breed*, to two prosecutions with potential punitive consequences for the same offenses; he will be twice forced to marshal his resources against those of the State in an effort to avoid punishment and would be twice subjected to the "heavy personal strain" which the experience represents. Like the adjudicatory hearing in *Breed*, the object of the proceedings before the director of the Department of Health was to determine whether Wolf had committed acts that violated a criminal law, and its potential consequences included both the stigma inherent in that determination and the deprivation of up to $10,000. Although the genesis of license revocation proceedings may well be in the remedial purpose reflected in most of § 71-155, the $10,000 fine is by the State's concession a hammer for the State rather than a remedy for a loss. The reality of these proceedings is thus detached from their original conception by the fact that, through the provision for a $10,000 fine, the director of the Department of Health has the power to punish.

Wolf was twice charged with violations of § 28-416 and twice put in jeopardy of punishment by the State. Were Wolf to face only a remedial sanction for his violation of these laws before the Department of Health, the State would be permitted to seek punitive sanctions in its criminal proceeding. Because Wolf did face a purely punitive sanction before the Department of Health however, the text of the Fifth Amendment, as interpreted in *Breed*, should estop the State from seeking punishment a second time after Wolf settled for a lesser sanction in the first proceeding.

The majority suggests that the true purpose of the $10,000 fine cannot be known until the director imposes it as a consequence for professional misconduct. Thus, under the majority's reasoning, in any case wherein a penalty is not "criminal" by name, the State can successfully defend against a plea in bar by claiming that it cannot know whether the penalty is punitive until it is imposed—irrespective of why it seeks the imposition of that particular penalty. In other words, the majority has found that double jeopardy protections are triggered only *after* the State actually takes life, liberty, or property. This absurd result vitiates the Fifth Amendment bars against being "twice put in jeopardy"—not just against multiple punishments, but also against multiple prosecution. The framers of the Fifth Amendment intended the Double Jeopardy Clause to stop an improper prosecution at its outset, not after the defendant's and the court's resources have been spent and possibly wasted in lengthy and arduous litigation.

I would reverse the order of the district court denying Wolf's plea in bar and remand this cause with instructions to enter an order barring prosecution of these offenses pursuant to the Double Jeopardy Clause of the Fifth Amendment.

FAHRNBRUCH, J., joins in this dissent.