WILMER SEDIVY, D.V.M., APPELLANT, V. STATE OF NEBRASKA EX REL. DON STENBERG, ATTORNEY GENERAL, APPELLEE.

567 N.W.2d 784

Filed June 3, 1997.   No. A-96-130.

Wilmer Sedivy, D.V.M., pro se.

Don Stenberg, Attorney General, and Amy Hollenbeck for appellee.

IRWIN, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

Wilmer Sedivy, D.V.M., was convicted in 1986 of two counts of federal income tax evasion in violation of I.R.C. § 7201 (1994). Thereafter, the Department of Health revoked Sedivy's veterinary medicine license in 1994 under Neb. Rev. Stat. § 71-147(4) (Reissue 1996) (misdemeanor or felony conviction rationally related to licensee's fitness to practice). Sedivy appealed the revocation to the district court for Lancaster County under the Administrative Procedure Act (APA) (specifically, Neb. Rev. Stat. § 84-917 (Reissue 1994)). The district court affirmed the revocation, and Sedivy now appeals to this court.

## FACTUAL BACKGROUND

Sedivy was convicted of federal income tax evasion in 1986, was imprisoned for 18 months, was found to have violated his probation in 1991, was again sent to prison for 1 year, and was released from prison in 1992. In 1993, the Department of Health (DOH) filed a petition to revoke Sedivy's license to practice veterinary medicine in Nebraska on two statutory grounds: violation of § 71-147(2) (grossly immoral or dishonorable conduct affecting fitness to practice) and § 71-147(4) (misdemeanor or felony conviction rationally related to fitness to practice). A hearing before an administrative hearing officer of the DOH occurred on January 31, and on June 7, 1994, the director of the DOH revoked Sedivy's veterinary medicine license. At the hearing, Sedivy represented himself.

At the administrative hearing, the State opened its case by introducing into evidence exhibit 1, consisting of several documents, including a partial historical account entitled

"Background," a letter from the chief deputy clerk of the U.S. District Court transmitting certified copies of the "Judgment and Probation/Commitment Order," and a probation revocation and commitment order of December 18, 1991, signed by the Honorable Lyle E. Strom of the U.S. District Court. The order from the U.S. District Court indicates that "[o]n March 5, 1987, [the U.S. District] Court suspended the execution of sentence . . . upon [Sedivy] after his conviction for income tax evasion in violation of Title 26, United States Code, Section 7201." The judgment and probation/commitment order, signed by Judge Strom, shows that Sedivy was sentenced to 18 months in prison and fined $5,000 for the first count. On the second count, he was sentenced to 5 years in prison and fined $5,000; however, execution of the sentence was suspended, and Sedivy was placed on probation. In the "Order of Revocation of Probation and Commitment" entered on December 18, 1991, the U.S. District Court found that Sedivy violated his probation by not having regular employment (working as a consultant earning $300 a month did not qualify as regular employment); by not paying the $10,000 in fines on or before June 1, 1989; by filing income tax returns for 1982 through 1988 which did not include enough information to compute a tax liability and to which Sedivy did not sign his name; and by failing to pay any costs of his prosecution. That order then revoked Sedivy's probation and sentenced him to prison for 1 year.

Part of exhibit 1 was a photocopy of a newspaper article. This article largely duplicates what can be found in the other documents which compose exhibit 1. At the DOH hearing, Sedivy objected to exhibit 1 because the legal conclusions in the documents were invalid. Sedivy's objection to the newspaper article included with exhibit 1 was sustained, but the rest of exhibit 1 was received into evidence. Although the hearing officer explained, "[T]he record will reflect that [the newspaper article] will be removed," the newspaper article was never physically separated from exhibit 1 and is in the record before us. But, the record is clear that the newspaper article was not received into evidence by the hearing officer.

Exhibit 2, a copy of the notice of hearing, was also received into evidence. At the beginning of the hearing, the hearing offi-

cer reminded Sedivy that he had the right to an attorney, and Sedivy indicated he realized that but that he wished to proceed pro se. Additionally, when exhibit 2 was offered, Sedivy stated, "I think it sufficiently noticed me. I'm here today."

The State then called Sedivy to testify. At that time, Sedivy inquired as to whether he had a right not to be a witness for the State. After some discussion about that point, the hearing officer noted for the record Sedivy's objection to being called as a witness on the State's behalf and advised Sedivy that he would be sworn in and that if he had objections, the hearing officer would rule on them. Sedivy then explained he did not take "oaths" but he did affirm to tell the truth.

In response to the State's questions and without further objection, Sedivy admitted that he had served an 18-month prison sentence for tax evasion and a 1-year prison sentence for probation violation. Sedivy admitted that "judgment and probation commitments" for income tax evasion were entered March 6, 1987.

Exhibit 3, a copy of the indictment, was introduced and received into evidence. Sedivy then "testified" extensively in narrative format. This "testimony" was little more than Sedivy's collateral attack upon the underlying convictions for income tax evasion. "The conviction of a felony cannot be collaterally attacked in a proceeding before the Director of Health for revocation of a license to practice a profession." *State ex. rel. Meyer v. Eyen*, 184 Neb. 848, 850, 172 N.W.2d 617, 619 (1969). Thus, Sedivy's complaints in his "testimony" and in his brief before this court about the underlying federal convictions are of little consequence in this proceeding.

The director of the DOH found that Sedivy was convicted of income tax evasion and that thereafter he violated the terms of his probation and was imprisoned. The DOH order found that the State had failed to establish by clear and convincing evidence that Sedivy's conduct constituted grossly immoral or dishonorable conduct, but it determined that there was a rational relation between his felony convictions and his fitness to practice veterinary medicine. The DOH order explained:

> While Dr. Sedivy may be sincere in his objection to the income tax the evidence does, however, indicate he appar-

ently engaged in a rather elaborate scheme to disguise and obscure income, which could easily be characterized as out-and-out fraud. Dr. Sedivy's behavior evidences disrespect for government and government regulations. The practice of veterinary science in this state is a highly regulated activity. It appears unlikely that Dr. Sedivy would be willing to adhere to laws or regulations pertaining to the practice of veterinary science if those laws or regulations were contrary to his personal convictions.

Consequently, the DOH revoked Sedivy's veterinary medicine license on June 7, 1994.

Sedivy sought timely review of the revocation in the district court for Lancaster County under the APA. The district court properly ignored Sedivy's collateral attack on his conviction. The court found that Sedivy's other arguments could be summarized as that "the administrative action consists [of] double jeopardy." The district court found that the Double Jeopardy Clause "does not preclude disciplinary action against a professional license following a criminal conviction for the same offense," citing *Kaplan v. Department of Registration & Ed.*, 46 Ill. App. 3d 968, 361 N.E.2d 626 (1977). The district court found that *Kaplan* supported the proposition that the purpose of a disciplinary action is to protect the public health, safety, and welfare and to " 'maintain sound professional standards of conduct for the purpose of protecting the public and the standing of the medical profession in the eyes of the public.' " Although Sedivy was licensed as a veterinarian, not a medical doctor, the district court found that this made no difference because the reasoning was equally applicable to a veterinarian.

## ASSIGNMENTS OF ERROR

Sedivy assigns nine errors, and we take the liberty of stating them more succinctly: (1) The district court erred in finding the agency's decision was supported by clear and convincing as well as competent, material, and substantial evidence; (2) the DOH and the district court erred in relying upon a newspaper article which was not received into evidence; (3) the district court erred in finding that " '[i]t appears unlikely that . . .' " Sedivy would honor federal and state rules and regulations; (4)

Sedivy was denied due process; (5) Sedivy's First Amendment rights were violated; (6) Sedivy was punished twice for the same offense, constituting double jeopardy; (7) the district court erred in relying on the *Kaplan* decision to controvert Sedivy's double jeopardy and stare decisis argument; (8) the district court erred in not considering a section of the charging statute; and (9) the district court erred when it ignored "twenty grounds [of Sedivy's] attack on the agency order." We do not discuss each of these separately because there is overlap among them.

## STANDARD OF REVIEW

The district court's review is de novo upon the record of the administrative body when a petition for judicial review of the agency decision is filed under the APA. *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995).

A judgment rendered or final order made by the district court may be reversed, vacated, or modified on appeal for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Reissue 1994); *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994). An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

## ANALYSIS

*Competent, Material, and Substantial Evidence.*

Sedivy argues that the district court erred in finding that the DOH had competent, material, and substantial evidence to revoke his license. Specifically, Sedivy points to the newspaper article which is in our record, and he contends that the newspaper article constituted the basis for the DOH's finding that his convictions for income tax evasion were rationally related to the practice of veterinary medicine. As previously noted, the hearing officer excluded the article from evidence. The fact that it remains in the record (which is what properly happens with offered, but unreceived, exhibits) simply does not support Sedivy's claim that the DOH acted on the basis of a newspaper

article. There was other admissible evidence for the DOH to consider, to which we now turn.

With respect to the sufficiency of the admitted evidence, the rule is that an appellate court will not substitute its judgment on factual matters when the district court's factual findings are supported by competent evidence. *Lynch v. Nebraska Dept. of Corr. Servs., supra.* Instead, in reviewing an APA appeal for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Slack Nsg. Home v. Department of Soc. Servs., supra.* The district court said:

> This Court finds that the Director was correct in determining that there was a rational connection between income tax evasion and the practice of veterinary medicine. The Director found that [Sedivy's] method of transferring funds to the British West Indies and funneling it back as income to a sole shareholder corporation could easily be characterized as fraud. [Sedivy's] behavior evidences disrespect for the government and government regulations. The practice of veterinary science in this state is a regulated activity. It appears unlikely that [Sedivy] would adhere to the laws or regulations pertaining to the practice of veterinary science if those laws or regulations were contrary to his personal convictions.

Sedivy argues that the newspaper article, which was not admitted into evidence, was the only basis to determine that he engaged in a scheme where money was funneled to the British West Indies and back. For shorthand purposes, we shall refer to this notion as the "West Indies scheme."

Ignoring the newspaper article, which we must do, the only evidentiary basis for a finding that there was a West Indies scheme is a portion of exhibit 1, labeled only as page 2 and headed "Background." This document is incomplete, as there are obviously other pages, for example, page 1 and at least page 3, because page 2 ends in midsentence. Whether the document is missing pages 1 and 3, or pages 1 and 3 through 30, we cannot know. On page 2, the following paragraph appears:

> Information from the U.S. Probation Office indicated the indictment against Wilmer Sedivy alleged he failed to

pay income taxes for the years of 1980 and 1981. Reportedly, William [sic] Sedivy evaded federal income taxes when he had a taxable income of $185,400.00, creating a tax liability of $77,000.00. During the court hearings, testimony indicated Wilmer Sedivy funneled money to a trust set up in the British West Indies and had money sent back as payment to a corporation of which he was the sole owner.

While Sedivy did object to exhibit 1, we have great trouble following the rambling discourse in the record about exhibit 1 or seeing how such a disjointed discussion could be viewed as a proper objection, even though the hearing officer tried to help Sedivy state an objection, if he had one. The best we can do is state that Sedivy argued that the content of such exhibit was wrong. He did not object to the exhibit for lack of foundation. While the discussion section in the DOH order does say that Sedivy "engaged in a rather elaborate scheme to disguise and obscure income, which could easily be characterized as out-and-out fraud," that is not one of the two findings of fact made by the DOH order of June 7, 1994. The revocation is premised on two express "Findings of Fact": (1) the convictions of two counts of income tax evasion and (2) the violation of probation and resulting incarceration. There is no doubt whatsoever from the record about the truth of these findings. Thus, whether Sedivy funneled money to the British West Indies and back to this country or not, we do not read the DOH order or the district court's decision as saying that the existence of the West Indies scheme was a predicate for the DOH's revocation of his license. The district court, however, did write that the director of the DOH had found that Sedivy's "method of transferring funds to the British West Indies and funneling it back as income to a sole shareholder corporation could easily be characterized as fraud."

We have some question about whether the district court's conclusion about what the director of the DOH found concerning the West Indies scheme is completely accurate or not. But, our study of the director's "Findings of Fact, Conclusions of Law and Order" and the district court's "Order" convinces us that in both venues, the key finding was the conclusion, drawn from Sedivy's convictions and his clearly stated belief that he

does not have to pay tax on his income, that he would violate the laws regulating the practice of veterinary medicine if Sedivy ever found them contrary to his personal beliefs. The record establishes that Sedivy earned income and failed to pay the tax thereupon. Whether he took his money to the West Indies and then funneled it back under some sort of subterfuge or whether he buried it in the backyard in a Mason fruit jar makes no difference. The fundamental fact is that he broke the law based upon an unsubstantiated and misguided belief that he is somehow above the law which requires income earning citizens to pay taxes.

In considering this matter, it is easiest to be frank: Sedivy is an unabashed "tax protestor." The record, his brief, and his oral argument make this quite clear. But, we are a society governed by laws, not by the personal beliefs of individual men and women. Anarchy ultimately results if citizens are allowed to select which of the legitimately enacted laws of the state and federal government they will obey. Sedivy has selected the tax laws as those that he disagrees with, and such disagreement is his right. Yet, the right to disagree with a law does not include a right to disobey. Because the obligation to file a tax return and pay tax on income is the law of the land, and binds Sedivy, he must accept the consequences of his choice to disregard the law. One of these consequences is that his behavior provides the DOH, which regulates his veterinary medicine license, with evidence upon which to conclude that if he disagreed with some other governmental policy formalized by law, for example, that he cannot hand out narcotics willy-nilly, he would not obey that law either. This conclusion flows inevitably from the fact that there is no legal basis whatsoever for his failure to properly file tax returns and pay income tax. He has acted only on the basis of his personal belief.

If Sedivy forms another personal belief that runs counter to the numerous statutory regulations upon veterinarians, his past behavior indicates to the DOH that he will follow his own beliefs, no matter how misguided, rather than follow the dictates of the law which have been legitimately created by our democratic society.

Sedivy argues that there must be some evidence that he has actually failed to follow a statute, rule, or regulation directly

concerned with the practice of veterinary medicine, as opposed to one which merely governs payment of taxes. In short, he would have us say that unless his convictions relate directly to his ability to pull a calf or doctor a horse, his convictions are of no moment on the question of his licensure. We disagree, and we find no authority for the notion that the convictions must be directly and immediately related to the practice of veterinary medicine in this way. Only a rational relationship between his convictions and the practice of veterinary medicine is required. The conclusion that he will follow the dictates of his own thinking rather than the law is supported by the record. We are unwilling, as was the director of the DOH, to conclude that Sedivy's disrespect for society's laws is limited solely to taxes. Therefore, a rational relationship between his convictions and the practice of veterinary medicine, which is highly regulated and requires strict adherence to the dictates of law, has been shown.

The only decided case we have found involving license revocation of a veterinarian is *Thorpe v. Bd. of Examiners in Vet. Medicine*, 104 Cal. App. 3d 111, 163 Cal. Rptr. 382 (1980), which held that smuggling 12,000 pounds of illegal marijuana into the country and defrauding an insurance company justified revocation of a veterinarian's license. That the license of a drug smuggler, who would otherwise be licensed to handle narcotic drugs, would be revoked is too obvious to be of much use here. However, there are some cases involving medical doctors and tax evasion convictions which are helpful and which support our conclusion that there is a rational relationship between the convictions and the practice of veterinary medicine. We detail one of the most famous scenarios.

In *Windham v. Board of Medical Quality Assur.*, 104 Cal. App. 3d 461, 163 Cal. Rptr. 566 (1980), Windham was indicted in 1973 and convicted of income tax evasion in federal court in Mississippi. The conviction occurred after he had taken up residence in California, where he completed a psychiatric residency in 1975. It was not until 1977 that the California Board of Medical Quality Assurance filed to revoke Windham's license because of the conviction for income tax evasion. The California Court of Appeal made special note that no issue was

raised by Windham concerning the time lag between his conviction and the action against his medical license. Under the applicable California statute, the board could suspend or revoke the license if the doctor had been convicted of a crime which was rationally related to the "qualifications, functions or duties of the business or profession for which the license . . . was issued . . . ." 104 Cal. App. 3d at 470-71, 163 Cal. Rptr. at 571. On appeal from the revocation of his license, Windham argued that a conviction for income tax evasion was not rationally related to his fitness to practice medicine, as Sedivy does here. The California court found that there had to be a nexus between the crime and the licensed activity, i.e., between Windham's conviction for income tax evasion and his fitness to practice medicine. Windham argued that his transgression was not the type which reflected on his fitness to practice medicine and that in any event, he was "totally rehabilitated," 104 Cal. App. 3d at 472, 163 Cal. Rptr. at 572, which we take to mean that he now believed in paying his taxes.

■ The *Windham* court observed that doctors deal financially with local, state, and federal government in many ways other than personal tax matters and that such matters require honesty. The court also noted that Windham's specialty of forensic medicine leads to frequent courtroom testimony, which requires a high degree of honesty. Finally, the court observed that the doctor-patient relationship "is based on utmost trust and confidence in the doctor's honesty and integrity." 104 Cal. App. 3d at 470, 163 Cal. Rptr. at 570. The court reasoned, "[W]e find it difficult to compartmentalize dishonesty in such a way that a person who is willing to cheat his government out of $65,000 in taxes may yet be considered honest in his dealings with his patients." *Id.* In the same vein, we do not think that we need to compartmentalize Sedivy's felony convictions and his willingness to obey the law. His convictions are not speeding tickets, lapses in judgment, or crimes of passion. Instead, they are a deliberate and calculated decision not to do what our society lawfully demands of all other citizens who earn income. This is a serious crime which strikes at the core of our society. It evidences a level of dishonesty and hypocrisy which seems lost on the "tax protester" as he drives on a public highway to the U.S.

post office to mail his brief to this court, seeking restoration of his professional license. Sedivy cannot expect to consciously and unrepentantly disobey one group of laws, the tax laws, without those who regulate professional licensure in his field reaching the conclusion that he is at risk to violate whatever other laws he might develop a personal aversion to, including those laws which regulate the practice of veterinary medicine. The director of the DOH did not err in finding a rational relationship between convictions for federal tax evasion and the practice of a highly regulated profession such as veterinary medicine.

*Newspaper Article.*

In his second assignment of error, Sedivy poses the question, "Was it error by the lower court [district court] to accept a newspaper article, refused into evidence, over an affidavit as substantial evidence for the required rational connection?" Sedivy apparently attached an affidavit to the brief he submitted in district court which the district court failed to consider. The affidavit, purportedly from Sedivy, argues that the newspaper article was "false in its entirety." Brief for appellant at 27. We have already found that the newspaper article was not received in evidence; therefore, we discuss this aspect of this assignment of error no further.

With respect to the affidavit, the district court reviewed Sedivy's case under the APA, meaning de novo on the record. See, *Styskal v. Wright*, 246 Neb. 513, 519 N.W.2d 543 (1994); § 84-917(5)(a). Sedivy's affidavit was not part of the record from the administrative hearing, and as a result, this affidavit was not properly before the district court. The district court properly excluded the affidavit from consideration.

*Denial of Substantive Due Process.*

Sedivy's fourth assignment of error asks, "Was it error of law by the lower court [district court] in affirming a particularly egregious denial of due process of law?" Our examination of Sedivy's brief on this point reveals that he does not allege a procedural due process violation but, rather, a violation of his substantive due process right to pursue his occupation.

■ Sedivy provides us with no authority for his proposition that the state may not, as a matter of substantive due process, regulate the professions by determining who may practice, or continue to practice, a profession. The law is clear that the state can discipline and regulate professionals, including suspending the privilege to practice. *State v. Wolf*, 250 Neb. 352, 549 N.W.2d 183 (1996) (revocation of defendant's license to practice pharmacy did not constitute punishment for double jeopardy purposes). See, also, *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996), *cert. denied* 517 U.S. 1249, 116 S. Ct. 2509, 135 L. Ed. 2d 198. Although it may not afford Sedivy any comfort, the fact that the Nebraska Supreme Court regulates the legal profession by disciplining those attorneys who violate the law or the code of ethics at least demonstrates consistency across the professions. See, *State ex rel. NSBA v. Bertagnolli*, 252 Neb. 83, 560 N.W.2d 179 (1997); *State ex rel. NSBA v. Zakrzewski*, 252 Neb. 40, 560 N.W.2d 150 (1997). In short, holding a professional license subjects one to regulation and demands professional conduct.

*First Amendment.*

The DOH found: "It appears unlikely that Dr. Sedivy would be willing to adhere to laws or regulations pertaining to the practice of veterinary science if those laws or regulations were contrary to his personal convictions." Sedivy argues that by having his veterinary medicine license revoked, his First Amendment right to criticize the government with respect to its tax policies is somehow being violated. No authority which is on point is cited.

In *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960), three young men held religious and personal beliefs that war was immoral. They were convicted for illegally entering a military reservation in Mead, Nebraska. On appeal, they argued that their First Amendment rights were violated. The Eighth Circuit Court of Appeals found that

> [w]hile these [freedom of religion, speech, and assembly] are fundamental rights, it is well settled that they are not absolute in all their aspects. [Citations omitted.] Moreover, the doing of an act motivated by religious belief

or thought to be a proper exercise of free speech does not necessarily preclude criminal liability.

*Id.* at 311.

Thus, the First Amendment right to free speech, while a fundamental right, is not absolute. Sedivy's personal beliefs are that he does not have to file income tax returns and pay tax. He is entitled to such beliefs, but such personal beliefs do not relieve him from the duty to obey the law. If he violates the law, a possible consequence is that his professional license may be jeopardized by his criminal activities.

*Devine v. Dept. of Public Institutions*, 211 Neb. 113, 317 N.W.2d 783 (1982), involved a free speech claim by a staff psychologist in the drug and alcohol unit at the Hastings Regional Center (HRC). HRC was statutorily required to include programming based in part on Alcoholics Anonymous (AA). In a series of lectures, Devine criticized the AA philosophy to patients receiving drug and alcohol treatment at HRC. Consequently, Devine was placed on probation when the patients became confused and other staff were required to spend unanticipated time refuting Devine's statements. Devine appealed under the APA and argued that his First Amendment rights were violated. On appeal, the *Devine* court found that "the right of free speech is not absolute," *id.* at 116, 317 N.W.2d at 785, and the court concluded that Devine's statements were not protected by the First Amendment because the State, as an employer, had an interest in promoting the efficiency of the public services that it achieves through its employees that outweighed Devine's interests, as a citizen, in commenting on matters of public concern.

In the case at hand, Sedivy's disagreement with the tax policies of this nation is his right, and he can work within the political process to change the law. However, Sedivy cannot violate the tax law and label that "free speech." He is subject to administrative action against his professional license because he has been convicted of two felonies. The action against his license is not for disagreeing with our tax laws, as that is a protected activity. Instead, it is based on his violation of the law—a wholly different matter which does not implicate the First Amendment in any way.

*Double Jeopardy.*

Sedivy cites *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), and argues that he is being punished twice (prison sentence and revocation of his veterinary medicine license) for the same offense. We have already dealt with this claim to some extent.

The Double Jeopardy Clause protects against three abuses of the criminal justice system: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *State v. Wolf*, 250 Neb. 352, 549 N.W.2d 183 (1996). The revocation or suspension of a professional license generally does not constitute punishment for the purposes of double jeopardy analysis but, rather, serves the remedial purpose of protecting the public from unfit practitioners. Here, Sedivy's unfitness is that he is in a profession which has duties and privileges imposed by law, but he places his own beliefs above the law. There is no double jeopardy problem. See *State v. Wolf, supra.*

*Failure to Consider Charging Statute.*

Sedivy argues that the language of § 71-147(4), under which the DOH acted, requires the State to prove that a federal felony conviction must be a crime under Nebraska law. The plain language of the statute shows that the crime can be one under state or federal law. Sedivy's argument in this regard is senseless, and we discuss it no further.

*Failure to Address Collateral Attacks.*

Finally, Sedivy's final assignment of error asks, "Was it error of law by the lower court [district court] to ignore twenty grounds in appellant's attack on the agency order?" This assignment of error has a "When did you stop kicking your dog?" quality to it. We cannot assume that the district court ignored the "twenty grounds." But, since most of Sedivy's "grounds" are direct or sometimes thinly veiled attacks on his federal convictions, the district court could properly consider and then dismiss them without further comment. The reality of this matter is that we have not been pointed to any error in the administrative proceedings or the district court's review thereof.

Consequently, all of Sedivy's assignments of error are without merit.

AFFIRMED.