BETTY L. THORSON, APPELLANT, v. NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, NANCY MONTANEZ, DIRECTOR, APPELLEE.

740 N.W.2d 27

Filed October 19, 2007.   No. S-06-223.

Steven E. Gunderson, of Gunderson Law Offices, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, John L. Jelkin, and Douglas D. Dexter for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Betty L. Thorson applied with the Nebraska Department of Health and Human Services (DHHS) for medical assistance benefits known as Aid to the Aged, Blind, and Disabled (AABD) and Medicaid. DHHS determined that based on the value of Thorson's irrevocable trust for which Thorson is the beneficiary, Thorson was ineligible for AABD and Medicaid benefits.

## BACKGROUND

On December 2, 1989, Thorson executed the "Irrevocable Betty Lou Thorson Trust" (the Trust). Thorson is the grantor and beneficiary of the corpus of the Trust, and her son is the trustee. The Trust was established as an irrevocable instrument. It authorizes the trustee, in his sole and absolute discretion, to pay to or apply for the benefit of Thorson such amounts from the principal or income of the Trust as he deems necessary or advisable for the satisfaction of Thorson's special needs. Special needs are referred to in the Trust as "the requisites for maintaining [Thorson's] good health, safety and welfare when, in the sole and absolute discretion of the Trustee, such requisites are not being adequately provided by any public agency, office or department of any State, or of the United States." The Trust further provides that the express purpose of the Trust is that "the

income and principal hereof be used only to supplement other benefits received by or available to [Thorson]."

On December 19, 2003, Thorson applied for AABD and Medicaid benefits with DHHS. Thorson had previously been denied assistance benefits on four prior occasions, the last occasion because her resources exceeded the program standard. Attached to Thorson's application for assistance was an accounting of the Trust's assets, which totaled $69,740.68.

After an administrative hearing on the matter, the director of DHHS affirmed DHHS' denial of Thorson's application for benefits. The director of DHHS specifically found that the finding that Thorson was ineligible for AABD and Medicaid benefits due to resources in the Trust was correct.

Thorson filed a petition for review of the DHHS decision pursuant to the Administrative Procedure Act (APA). Thorson alleged that the determination that her resources exceed the program's standard is unsupported by the evidence and is contrary to law. The district court affirmed the ruling of the director, concluding that it was proper for DHHS to consider the Trust as an available asset for purposes of determining Thorson's assistance eligibility. Thorson filed this timely appeal.

## ASSIGNMENT OF ERROR

Thorson asserts that the district court erred in determining that assets held in the Trust were available resources in determining Thorson's eligibility to receive AABD and Medicaid benefits.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[1] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent

---

[1] *Pohlmann v. Nebraska Dept. of Health & Human Servs.*, 271 Neb. 272, 710 N.W.2d 639 (2006).

evidence, and is not arbitrary, capricious, or unreasonable.[2] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[3]

## ANALYSIS

We are presented in this appeal with the question of whether the corpus of an irrevocable, discretionary trust established in 1989 is a resource available to the beneficiary for purposes of determining the beneficiary's eligibility for AABD and Medicaid benefits.

In 1965, Congress enacted the Medicaid program as a cooperative federal-state program to provide health care to needy individuals.[4] Although participation in the Medicaid program is optional, once a state has voluntarily elected to participate, it must comply with standards and requirements imposed by federal statutes and regulations.[5] By enacting Neb. Rev. Stat. § 68-1018 et seq. (Reissue 2003, Cum. Supp. 2004 & Supp. 2005), Nebraska has elected to participate in the Medicaid program and has assigned to DHHS the responsibility of administering the program.[6]

Under federal law, a state participating in the Medicaid program must establish resource standards for the determination of eligibility.[7] These standards must take into account "'only such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of the U.S. Department of Health and Human Services], available to the applicant or recipient.'"[8]

---

[2] *Id.*

[3] *Id.*

[4] *Matter of Kindt*, 542 N.W.2d 391 (Minn. App. 1996). See, also, *Pohlmann v. Nebraska Dept. of Health & Human Servs., supra* note 1.

[5] *Pohlmann v. Nebraska Dept. of Health & Human Servs., supra* note 1.

[6] *Id.*

[7] *Id.*; 42 U.S.C. § 1396a(a)(17)(B) (2000).

[8] *Pohlmann v. Nebraska Dept. of Health & Human Servs., supra* note 1, 271 Neb. at 276, 710 N.W.2d at 643 (quoting § 1396a(a)(17)(B)).

Prior to 1986, an irrevocable trust was not considered an asset in determining whether an applicant was sufficiently needy to qualify for Medicaid benefits.[9] This created a situation whereby many individuals created trusts in order to shield their assets. And, as a result, many individuals were receiving Medicaid benefits when they had irrevocable trusts containing assets which would otherwise have made them ineligible for public assistance.[10]

"In 1986, Congress attempted to close the 'loophole' in the Medicaid act so that assets in certain trusts would be counted in determining whether a Medicaid applicant satisfied the maximum asset requirement."[11] The trusts set forth in the 1986 amendment were called Medicaid qualifying trusts.[12] The amendment established circumstances under which the assets of Medicaid qualifying trusts would be counted in determining the beneficiary's Medicaid eligibility.[13] The amendment was codified at § 1396a(k) and provided:

> (1) In the case of a medicaid qualifying trust . . . the amounts from the trust deemed available to a grantor . . . is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term "grantor" means the individual referred to in paragraph (2).

> (2) For purposes of this subsection, a "medicaid qualifying trust" is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the

---

[9] *Boruch v. Nebraska Dept. of Health & Human Servs.*, 11 Neb. App. 713, 659 N.W.2d 848 (2003).

[10] *Id.*

[11] *Id.* at 717, 659 N.W.2d at 852.

[12] See § 1396a(k) (1988).

[13] *Boruch v. Nebraska Dept. of Health & Human Servs., supra* note 9.

distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion . . . .

(3) This subsection shall apply without regard to—

(A) whether or not the medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this subchapter; or

(B) whether or not the discretion described in paragraph (2) is actually exercised.

(4) The State may waive the application of this subsection . . . where the State determines that such application would work an undue hardship.

In 1993, Congress repealed § 1396a(k) and adopted tighter restrictions under § 1396p(d). This amendment expanded the types of trusts which are counted in determining an applicant's Medicaid eligibility.[14] Under the plain language of § 1396p(d), if a person establishes an irrevocable trust with his or her assets and the individual is able, under any circumstances, to benefit from the corpus of the trust or income derived from the trust, the individual is considered to have formed a trust which is counted in the determination of Medicaid eligibility. The corpus of the trust is considered a resource available to the individual.[15] Although § 1396p(d) supersedes the Medicaid qualifying trust provisions set forth in § 1396a(k), § 1396p(d) does not apply to trusts created on or before August 10, 1993.[16] Thus, because the Trust in the present case was created in 1989, the 1993 amendment does not apply and we are governed by § 1396a(k). As explained by the Connecticut Supreme Court:

Because the medicaid act specifically provides that states may base eligibility determinations *only* on income and resources that are "available" to the applicant within the meaning of the act; see 42 U.S.C. § 1396a (a)(17)(B); and

---

[14] *Id.*

[15] *Id.*

[16] See Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13611(e)(2)(C), 109 Stat. 627 (1993). See, also, *Ahern v. Thomas*, 248 Conn. 708, 733 A.2d 756 (1999).

because § 1396p (d) does not apply to the trust at issue in the present case, the regulations and guidelines that implement § 1396p (d) also are not applicable to the trust at issue in the present case. Thus, we are not required to determine whether there are "any circumstances" under which the trust instrument provides the trustees with discretion to make payments of trust principal "for the benefit of" or "on behalf of" the plaintiff. Instead, all that we must determine is whether the trust instrument provides the trustees with discretion to distribute trust principal *"to the grantor"* within the meaning of § 1396a (k)(1).[17]

Under § 1396a(k)(2), an irrevocable trust established by an individual or his or her spouse is considered a Medicaid qualifying trust if the trustee could exercise any discretion in order to make payments from trust principal or income to the beneficiary.[18] In the present case, Thorson and DHHS agree that the Trust is a Medicaid qualifying trust.

Under § 1396a(k)(1), the amount of a Medicaid qualifying trust considered available to an applicant for purposes of determining eligibility for Medicaid benefits " 'is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor.' "[19] The Nebraska Administrative Code similarly provides that for irrevocable trusts established before August 11, 1993, the maximum amount that could have been distributed from either the income or the principal is considered an available resource. [20]

Thus, in order to determine whether the Trust's assets are an available resource, we must determine the maximum amount of

---

[17] *Ahern v. Thomas, supra* note 16, 248 Conn. at 721-22, 733 A.2d at 766 (emphasis in original).

[18] See, *Ramey v. Rizzuto*, 72 F. Supp. 2d 1202 (D. Colo. 1999); *Cohen v. Commissioner of the Division of Medical Assistance*, 423 Mass. 399, 668 N.E.2d 769 (1996).

[19] *Ahern v. Thomas, supra* note 16, 248 Conn. at 717, 733 A.2d at 763 (emphasis omitted).

[20] 469 Neb. Admin. Code, ch. 2, § 009.07A5f(1) (2005).

the Trust's assets the trustee could distribute under the terms of the Trust. DHHS argues that under the terms of the Trust, the trustee has the discretion to apply the trust income and corpus for the health, comfort, and support of Thorson where her needs are not being met by public assistance, which is the case here. Thorson, on the other hand, argues that the trustee does not have authority to do so. Thorson claims that the language of the Trust indicates the clear intent that the trust income and corpus be used only to supplement, not replace, other benefits received by or available to Thorson.

When the parties do not claim that the terms of a trust are unclear or contrary to the settlor's actual intent, the interpretation of a trust's terms is a question of law.[21] Regarding questions of law, an appellate court has an obligation to reach conclusions independent of those reached by the lower court.[22] Where the language of the trust is not clear, the rules of construction for interpreting a trust are applied; however, if the language clearly expresses the settlor's intent, the rules do not apply.[23] The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator.[24]

The terms of the Trust are clear. It provides in relevant part:

(A) Except as otherwise limited herein, during the lifetime of the Grantor, the Trustee shall pay to or apply for the benefit of the Grantor such amounts from the principal or income of the Trust, up to the whole thereof, as the Trustee, in his sole and absolute discretion, may from time to time deem necessary or advisable for the satisfaction of the Grantor's special needs. . . .

As used in this Trust Agreement, "special needs" refers to the requisites for maintaining the Grantor's good health, safety and welfare when, in the sole and absolute discretion of the Trustee, such requisites are not being adequately provided by any public agency, office or department of

---

[21] *In re Trust Created by Hansen, ante* p. 199, 739 N.W.2d 170 (2007).

[22] See *Zahl v. Zahl,* 273 Neb. 1043, 736 N.W.2d 365 (2007).

[23] *In re Wendland-Reiner Trust,* 267 Neb. 696, 677 N.W.2d 117 (2004).

[24] *Id.*

any State, or of the United States. "Special needs" shall include, but not be limited to, the costs of shelter, medical and dental expenses (and/or insurance therefore), clothing costs, travel and entertainment charges, expenses incurred in connection with programs of training, education and treatment and charges for essential dietary needs.

(B) This Trust is created expressly to provide for the Grantor's extra and supplemental care, maintenance and support, in addition to and over and above that provided through benefits she otherwise receives or may receive from any local, State or federal government, or from any private agency. It is the express purpose of this Trust that the income and principal hereof be used only to supplement other benefits received by or available to the grantor.

At the time the Trust was created, both federal and state statutory schemes allowed Medicaid claimants to become eligible for public assistance by entering into trust agreements making their assets legally unavailable to them. We conclude, however, that the Trust in question does not satisfy those federal and state statutes. Under the terms of the Trust, the trustee is authorized to pay to or apply for the benefit of Thorson the entirety of the Trust's assets in order to supplement any benefits Thorson may receive from any local, state, or federal government. As explained by other courts, the statutory definition of a Medicaid qualifying trust in § 1396a(k) "'does not require that a trustee have unbridled discretion, but indicates that *any* discretion to distribute assets is sufficient.'"[25] We cannot say that a distribution of the Trust's assets to Thorson if she were to receive any governmental assistance would be an abuse of the trustee's discretion. Accordingly, we cannot say that DHHS was wrong in determining that the assets of the Trust were an available resource.

■ Thorson also argues that DHHS may not deny her benefits until it has exhausted its judicial remedies to determine whether

---

[25] See *Allen v. Wessman*, 542 N.W.2d 748, 752 (N.D. 1996) (emphasis in original) (quoting *Gulick v. Dept. of Health & Rehab. Serv.*, 615 So. 2d 192 (Fla. App. 1993)).

the trustee has abused his discretion by refusing to distribute assets from the Trust to Thorson. The district court did not address this argument. Because an appellate court will not consider an issue on appeal that was not passed upon by the trial court, we do not address Thorson's argument.[26]

## CONCLUSION

For the reasons discussed above, we affirm the decisions of the district court and DHHS.

AFFIRMED.

---

[26] *In re Estate of Nemetz*, 273 Neb. 918, 735 N.W.2d 363 (2007).