750 N.W.2d 364 (2008)
16 Neb. App. 692
John C. CLARK, Appellant and Cross-Appellee,
v.
Les TYRRELL, Director of the State Real Estate Commission, and The State of Nebraska ex rel. State Real Estate Commission, Appellees and Cross-Appellants.
No. A-07-231.
Court of Appeals of Nebraska.
May 20, 2008.
*369 Robert R. Otte, of Morrow, Poppe, Otte & Watermeier, P.C., L.L.O., Lincoln, for appellant.
Adam J. Prochaska and, on brief, Neal E. Stenberg, of Harding & Schultz, P.C., L.L.O., Lincoln, for appellees.
SIEVERS, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
John C. Clark appeals from a decision of the district court for Lancaster County affirming the suspension of John's real estate broker's license by Nebraska's State Real Estate Commission (NREC). Les Tyrrell, director of the NREC, and the "State of Nebraska ex rel. State Real Estate Commission" (collectively the State) have cross-appealed. Because the district court's decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable, we affirm.

BACKGROUND
The record shows that John holds a real estate broker's license in both Nebraska and Iowa and is the designated broker for Why USA Independent Brokers Realty (Why USA), a licensed real estate firm in Omaha, Nebraska. Among the real estate agents affiliated with John is his son, David Clark, who is licensed as a real estate agent only in Nebraska.
In January or February 2004, Rex and/or Diane Terry called Why USA and spoke to David about their interest in buying a house within a 50-mile radius of *370 Bellevue, Nebraska. The Terry's asked David to help them in locating such a house, and David identified various houses in Omaha and showed them to the Terrys. The Terrys were also conducting their own research and located a house they wanted to see in Carter Lake, Iowa. The Terrys called David, who agreed to show them the property. It was not until sometime after David and the Terrys arrived at the property that David realized the house was in Iowa and that he was not licensed to show it to them or provide them with assistance in purchasing it.
David spoke with John about the Terrys' interest in the Carter Lake property, and together, David and John determined that if the Terrys pursued their interest, John would be "the essential Realtor of record." The Terrys later called David and told him they were considering making an offer on the Carter Lake house and asked to see it again. David met them at the property and brought with him a standard real estate purchase agreement. David discussed an offer with the Terrys and completed the offer form with them, which the Terrys signed. David then returned to the Why USA offices, where, at some point, John signed the offer as a witness and as an agent. David communicated the offer to the sellers, who made a counteroffer. David communicated the counteroffer to the Terrys, who accepted it. David then performed whatever tasks remained for a buyer's agent to do with respect to closing on the Carter Lake property.
Because of problems that occurred later, which are not relevant to this proceeding, it came to the attention of the real estate commissions in both Iowa and Nebraska that David had represented a buyer with respect to a sale in Iowa without the requisite license and that John, his broker, had permitted, if not facilitated, his doing so. John admitted wrongdoing before the Iowa Real Estate Commission (IREC) and paid a fine.
In July 2005, the NREC initiated proceedings against John, alleging that John had violated Neb.Rev.Stat. § 81-885.24(22) and (29) (Reissue 2003) in various regards. A hearing was held before the NREC on January 18, 2006. The NREC determined that John demonstrated unworthiness to act as a broker in violation of § 81-885.24(29). The penalty phase occurred immediately thereafter, and we have set forth relevant details of what occurred during the penalty phase of the hearing in the analysis section below. The NREC ordered that John's license be suspended for 2 years, all but 60 days of which suspension were to be served on probation. The NREC also ordered that within 1 year, John complete certain continuing education requirements in addition to the usual mandatory continuing education requirements for brokers. John appealed the decision of the NREC to the district court.
On January 30, 2007, the district court entered an order ruling on John's appeal. In considering the NREC's finding of a violation of § 81-885.24(29), the court determined that John's wrongdoing was something more than a simple failure to adequately supervise David. The court found that John knowingly aided David in violating the licensing regulations by representing himself to be the Terrys' agent when, in fact, he was not. The court found that John's actions evidenced a blatant disregard for the rules of his profession and clearly demonstrated unworthiness to act as a broker.
The district court rejected John's argument that because he had already been disciplined in Iowa, subjecting him to discipline in Nebraska constituted double jeopardy. The court found that the present proceeding was not a criminal proceeding *371 and that John had not been subjected to any criminal penalties.
In considering John's argument that the NREC had used his prior disciplinary history to enhance the discipline imposed in this case, the district court noted the process that had been followed by the NREC during the penalty phase of the hearing and set forth the disciplinary history revealed by the record. The court noted that John does not argue that the information brought forth in the hearing before the NREC was incorrect. The court determined that John was not given an enhanced penalty by the NREC, noting that the discipline imposed was well within the range of sanctions permissible by statute. The court determined that the NREC would have been remiss in deciding what sanction, within the permissible range of sanctions, to impose if it had not first looked at John's disciplinary history. The court disagreed with John's suggestion that the due process applicable to criminal sentencing should be applied to civil penalties such as this one. Finally, the court determined that the sanction imposed was not excessive.
On February 28, 2007, John filed notice of his intent to appeal the district court's decision to this court. Also on that date, John filed a motion in the district court seeking a stay of execution, during the pendency of his appeal to this court, of the sanctions imposed by the NREC. John also requested that the district court set the amount of any necessary supersedeas bond. In an order entered on April 5. the court found that the motion fell within the court's discretionary power to grant or deny and granted the motion. The court set the supersedeas bond in the amount of $275. The State takes issue with the court's grant of a stay and has accordingly perfected a cross-appeal to this court.

ASSIGNMENTS OF ERROR
John asserts that the district court erred by (1) concluding that John's discipline by the NREC did not violate double jeopardy in light of the discipline imposed by the IREC, (2) deciding that the NREC's consideration of John's prior disciplinary record before the NREC did not violate due process, (3) finding that John's conduct constituted unworthiness to act as a broker, and (4) determining that the level of discipline imposed by the NREC was not excessive.
On cross-appeal, the State asserts, consolidated and restated, that the district court erred by ordering a stay of execution, pending resolution of this appeal, of the discipline imposed against John.

STANDARD OF REVIEW
[1, 2] Final orders of the NREC are appealed in accordance with the Administrative Procedure Act. See Neb.Rev.Stat. § 81-885.30 (Reissue 2003). In reviewing final administrative orders under the Administrative Procedure Act, the district court functions not as a trial court but as an intermediate court of appeals. Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007). In an appeal under Neb.Rev.Stat. § 84-917(5)(a) (Cum.Supp.2006), the district court conducts a de novo review of the record of the agency. Tyson Fresh Meats v. State, 270 Neb. 535, 704 N.W.2d 788 (2005). In a de novo review by a district court of the decision of an administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings. Rainbolt v. State, 250 Neb. 567, 550 N.W.2d 341 (1996).
[3-5] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure *372 Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Thorson v. Nebraska Dept. of Health & Human Servs., 274 Neb. 322, 740 N.W.2d 27 (2007). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. Id. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. Id.

ANALYSIS

Double Jeopardy.
[6-8] John asserts that the district court erred by concluding that John's discipline by the NREC did not violate double jeopardy in light of the discipline imposed by the IREC. The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. State v. Miner, 273 Neb. 837, 733 N.W.2d 891 (2007). The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution. Id. The question in this case is whether John has received multiple punishments for the same offense.
[9] John relies on the fact that the Nebraska Supreme Court has determined that § 81-885.24 is penal in nature and must be strictly construed. See Hancock v. State ex rel. Real Estate Comm., 213 Neb. 807, 331 N.W.2d 526 (1983). A penal statute is one by which a forfeiture is imposed for transgressing the provisions of the act and where the extent of liability imposed is not measured or limited by the damage caused by the act or omission. Id. A determination that a statute is penal in nature, however, is not dispositive of the question of whether the penalty contemplated by the statute constitutes punishment for purposes of double jeopardy.
[10-14] In analyzing whether a penalty or sanction constitutes punishment for purposes of double jeopardy, an appellate court must inquire (1) whether the Legislature intended the statutory sanction to be criminal or civil and (2) whether the statutory sanction is so punitive in purpose or effect as to transform what was clearly intended as a civil sanction into a criminal one. See State v. Isham, 261 Neb. 690, 625 N.W.2d 511 (2001). Whether the Legislature intended a civil or criminal sanction is simply a matter of statutory construction. Id. Once a determination is made that a sanction was intended to be civil in nature, a court will reject the Legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention. Id. In analyzing whether the purpose or effect of a civil sanction statute is so punitive as to negate the Legislature's intent, the following factors are considered: (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment  retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears *373 excessive in relation to the alternative purpose assigned. Id. In analyzing whether the purpose or effect of a civil sanction statute is so punitive as to negate the Legislature's intent, the factors must be considered in relation to the statute on its face and are helpful, but are neither exhaustive nor dispositive. Id. The Double Jeopardy Clause protects against only multiple criminal punishments or prosecutions. Id.
[15-17] John was disciplined under § 81-885.24, which provides:
The commission may, upon its own motion, and shall, upon the sworn complaint in writing of any person, investigate the actions of any broker, associate broker, salesperson, or subdivider and may censure the licensee or certificate holder, revoke or suspend any license or certificate issued under the Nebraska Real Estate License Act, or enter into consent orders, whenever the license or certificate has been obtained by false or fraudulent representation or the licensee or certificate holder has been found guilty of any of the [enumerated] unfair trade practices[.]
The NREC found John guilty of violating § 81-885.24(29), that is, "[d]emonstrating negligence, incompetency, or unworthiness to act as a broker, associate broker, or salesperson, whether of the same or of a different character as otherwise specified in this section."
The district court determined that double jeopardy has no application in this case, and we agree. The Nebraska Supreme Court has determined that the revocation or suspension of a professional license generally does not constitute punishment for the purposes of double jeopardy analysis. State v. Wolf, 250 Neb. 352, 549 N.W.2d 183 (1996). This court has also determined that the State can discipline and regulate professionals, including suspending the privilege to practice, without running afoul of the Double Jeopardy Clause. Sedivy v. State, 5 Neb.App. 745, 567 N.W.2d 784 (1997). Specifically, in Sedivy, we stated, "The revocation or suspension of a professional license generally does not constitute punishment for the purposes of double jeopardy analysis but, rather, serves the remedial purpose of protecting the public from unfit practitioners." 5 Neb.App. at 759, 567 N.W.2d at 793. We also observe that Nebraska and Iowa are separate sovereigns and conclude that the discipline imposed on John by the real estate commissions of two separate sovereign entities did not violate double jeopardy. See U.S. v. Vinson, 414 F.3d 924 (8th Cir.2005) (while one sovereign may not place individual in jeopardy twice for same acts, subsequent prosecution by separate sovereign does not violate Constitution). In this case, John's discipline by the NREC served the remedial purpose of protecting the public from an unfit practitioner and did not constitute punishment for the purposes of double jeopardy analysis. The district court's determination that double jeopardy was not applicable conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. John's assignment of error is without merit.

Due Process.
[18] John asserts that the district court erred by deciding that the NREC's consideration of John's prior disciplinary record before the NREC did not violate due process. At the close of the evidentiary portion of the NREC hearing, the NREC began its deliberations on the record. John and his counsel were present during the course of the deliberations. First, the NREC deliberated concerning whether John was in violation of § 81-885.24(29) *374 and did find him in violation of that subsection. Then the NREC moved into the penalty phase of the hearing. After the result of the vote on the violation was announced, the NREC chairperson summarized John's prior disciplinary history before the NREC, which showed that John had four previous complaints filed against him between 1986 and 1997, three of which had been dismissed. The history showed that in 1997, John consented to the imposition of a suspension to be served entirely on probation for failing to properly maintain records relating to any real estate transaction, failing to maintain a bookkeeping system which would accurately and clearly disclose full compliance with the laws relating to trust accounts, failing to deposit any funds received as earnest money within 48 hours or before the end of the next banking day after an offer had been accepted, and failing to properly complete and retain the agency acknowledgment disclosure pamphlet. In the 1997 proceeding, a 12-hour continuing education requirement was also imposed. After the chairperson answered a few questions from other members seeking clarification on various points in John's disciplinary history before the NREC, the NREC then began discussion and voting on what sanction to impose in this case. An initial motion on a proposed sanction did not pass, but the NREC ultimately passed a motion to suspend John's license for 2 years, served on probation except for 60 days, with a continuing education requirement.
[19] John argues that by virtue of the recitation of his prior disciplinary history at the start of the penalty phase of the proceedings, he was somehow subjected to a penalty enhancement, and that his due process rights were accordingly violated. In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007). There is nothing in the record to show that John's procedural due process rights were violated in this case. John was present with his counsel during the disciplinary portion of the hearing, and although the NREC discussed among its members what sanction to impose and did not solicit input from John or his counsel during this portion of the hearing, there is nothing in the record to suggest that John could not have objected in some way if he found the chairperson's recitation of his disciplinary history to be inaccurate. John, in fact, did not argue before the district court, or before this court, that any portion of the recited history was incorrect. The record does not suggest either that John received some form of enhanced sanction. As discussed below, the sanction imposed by the NREC was well within the NREC's authority.
There is no indication in the record that the district court placed any undue emphasis on John's prior disciplinary history in affirming the discipline imposed by the NREC, and we note that in the criminal context, at the sentencing stage of the proceedings, a court may consider many factors that would not be entered into evidence at trial, including past criminal record, which may include information about dismissed charges and sentences imposed for past convictions. See State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007). The district court's determinations that John's sanction was not enhanced and that his due process argument was without merit conform to the law, are supported by competent evidence, and are not arbitrary, capricious, or unreasonable.

*375 Unworthiness.

[20-23] John asserts that the district court erred by finding that John's conduct constituted unworthiness to act as a broker. John urges this court to find § 81-885.24(29) to be unconstitutionally vague. The Nebraska Court of Appeals cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before it, the court does have jurisdiction to determine whether a constitutional question has been properly raised. Olson v. Olson, 13 Neb.App. 365, 693 N.W.2d 572 (2005). To properly raise a challenge to the constitutionality of a statute, a litigant is required to strictly comply with Neb. Ct. R. of Prac. 9E (rev.2006) and to properly raise and preserve the issue before the trial court. See Olson, supra. Because the district court did not pass on the constitutional issue raised by John on appeal, he has waived it. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. State v. Moyer, 271 Neb. 776, 715 N.W.2d 565 (2006).
[24] John argues that he did not violate § 81-885.24(29), because his conduct did not reach the required level of negligence, incompetency, or unworthiness. In Wright v. State ex rel. State Real Estate Comm., 208 Neb. 467, 304 N.W.2d 39 (1981), the Nebraska Supreme Court considered a violation of the "unworthiness" subsection of 81-885.24 and was persuaded and convinced by the language and reasoning in cases such as Goodley v. N.J. Real Estate Com., 29 N.J.Super. 178, 102 A.2d 65 (1954), a case wherein the court held that "unworthiness," as used in the New Jersey statute, "signified the lack of those ethical qualities that befit the vocation." 208 Neb. at 472, 304 N.W.2d at 42. In addressing John's argument in this case, the district court stated:
John wishes to characterize his wrong doing as a simple failure to adequately supervise David. The [NREC] saw it differently and so do I. What John did was knowingly aid David in violating the licensing regulations by representing himself to be the Terrys' agent when, in fact, he was not. John also [re]presented that he witnessed the Terrys' signatures on the offer to purchase when, in fact, he did not.... These actions evidence a blatant disregard for the rules of his profession and clearly demonstrate unworthiness to act as a broker.
In his brief on appeal, John argues that he was an "`attesting witness'" rather than a "`subscribing witness,'" arguing that it was entirely reasonable for him to rely on David's representation that the Terrys had signed the offer to purchase. Brief for appellant at 21. We see the more critical facts to be that John allowed David to continue with the Terry transaction although David was not licensed in Iowa and that John, by signing the offer to purchase, held himself out as the Terrys' agent, when he was not. The district court's determination that John's actions clearly demonstrated his unworthiness to act as a broker conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

Level of Discipline.
[25] John asserts that the district court erred by determining that the level of discipline imposed by the NREC was not excessive. After determining that John was in violation of § 81-885.24(29), the NREC suspended John's license for 2 years, to be served on probation, except for 60 days. John argues that a suspension served entirely on probation with a continuing education requirement and/or fine would have been more appropriate and that the sanction imposed will operate as a "`death penalty'" for his business. *376 Brief for appellant at 25. The district court simply found that the sanction was not excessive. We agree. The sanction imposed was well within the NREC's authority. See § 81-885.24. The district court's decision regarding John's sanction conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

Stay of Execution.
[26,27] In its cross-appeal, the State asserts that the district court erred by ordering a stay of execution, pending resolution of this appeal, of the discipline imposed against John. The district court determined that John's motion to stay and to set a supersedeas bond fell within the court's discretionary power to grant or deny, and the court granted the motion, set the amount of supersedeas, and stayed its order of January 30, 2007. The trial court may in its discretion grant supersedeas in cases not specified in Neb.Rev. Stat. § 25-1916 (Cum.Supp.2006) (general supersedeas statute). Hall v. Hall, 176 Neb. 555, 126 N.W.2d 839 (1964). An allowance of supersedeas in such a case may be granted in such an amount and on such conditions as the court determines necessary for the protection of the parties. Id.
The State directs our attention to § 84-917(3) (concerning stays of agency decisions in appeals to district court under Administrative Procedure Act) and argues that the provisions of this subsection should continue to apply when an agency decision is further appealed from the district court to this court. Section 84-917(3) provides:
The filing of the petition or the service of summons upon such agency shall not stay enforcement of a decision. The agency may order a stay. The court may order a stay after notice of the application therefor to such agency and to all parties of record. If the agency has found that its action on an application for stay or other temporary remedies is justified to protect against a substantial threat to the public health, safety, or welfare, the court may not grant relief unless the court finds that: (a) The applicant is likely to prevail when the court finally disposes of the matter; (b) without relief, the applicant will suffer irreparable injuries; (c) the grant of relief to the applicant will not substantially harm other parties to the proceedings; and (d) the threat to the public health, safety, or welfare relied on by the agency is not sufficiently serious to justify the agency's action in the circumstances. The court may require the party requesting such stay to give bond in such amount and conditioned as the court may direct.
(Emphasis supplied.)
The State argues that the stay entered by the district court in this case clearly violated § 84-917(3) because the court failed to make findings on the four criteria set forth in that subsection. The State further argues that after having entered a final order affirming the decision of the NREC, the district court was not in a position to determine that John was "`likely to prevail when the court finally dispose[d] of the matter.'" Brief for appellees on cross-appeal at 41. The State relies on Miller v. Horton, 253 Neb. 1009, 574 N.W.2d 112 (1998), wherein the Nebraska Supreme Court found that a stay under § 84-917(3) was improvidently granted because the trial court had not made any of the findings required under that subsection.
We need not determine whether § 84-917(3) is applicable to further appeals of agency decisions from the district court to this court. Even if it were applicable, there is nothing in the record in this case *377 to suggest that the district court would have been required to make findings on the listed criteria. The requirement in § 84-917(3) that the court must make findings on these criteria before granting relief is conditioned upon a finding by the agency that "its action on an application for stay or other temporary remedies is justified to protect against a substantial threat to the public health, safety, or welfare." There is no such finding in the record before us. The court's grant of a stay in this case conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. Accordingly, the State's assignment of error on cross-appeal is without merit.

CONCLUSION
We affirm the decision of the district court in this case because it conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
AFFIRMED.