In re Interest of Mischa S., a child
under 18 years of age.
State of Nebraska, appellee, v. Deanna R.
and Chris S., appellants.

___ N.W.2d ___

Filed June 24, 2014.    No. A-13-265.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.

2. **Moot Question.** A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome.

3. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

4. **Moot Question: Appeal and Error.** Under the public interest exception to the mootness doctrine, an appellate court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination.

5. ____: ____. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.

6. **Constitutional Law: Courts: Jurisdiction: Statutes.** The Nebraska Court of Appeals cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before it, the court does have jurisdiction to determine whether a constitutional question has been properly raised.

7. **Juvenile Courts: Evidence: Proof.** Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) requires that the State prove the allegations set forth in the adjudication petition by a preponderance of the evidence in cases involving both non-Indian and Indian children.

8. ____: ____: ____. In adjudication cases, the standard of proof for the active efforts element in Neb. Rev. Stat. § 43-1505(4) (Reissue 2008) is proof by a preponderance of the evidence.

9. **Indian Child Welfare Act: Evidence: Appeal and Error.** In a foster care placement determination involving an Indian child, the failure to make findings under Neb. Rev. Stat. § 43-1505(4) (Reissue 2008) is harmless error where a de novo review indicates that evidence supports these findings.

10. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Buffalo County: GRATEN D. BEAVERS, Judge. Reversed and remanded for further proceedings.

Mitchel L. Greenwall, of Greenwall, Bruner & Frank, L.L.C., for appellants.

Mandi J. Amy, Deputy Buffalo County Attorney, for appellee.

Mindy L. Lester, of Ross, Schroeder & George, L.L.C., guardian ad litem.

INBODY, Chief Judge, and MOORE and PIRTLE, Judges.

MOORE, Judge.

## INTRODUCTION

Deanna R. and Chris S. appeal from the order of the county court for Buffalo County, sitting as a juvenile court, which ordered the removal of their daughter Mischa S. from the family home. Because we find that the juvenile court erred in finding that serious emotional damage would result if Mischa is not removed from the home, we reverse, and remand for further proceedings.

## PROCEDURAL BACKGROUND

Deanna and Chris are the parents of Mischa, born in 1998, and six additional younger children. Deanna is a member of the Oglala Sioux Tribe. She has not enrolled her children, but does know how to do this, and she has indicated that her children will qualify for affiliation. Deanna reports that the family has never lived on the reservation, that she was raised Catholic, and that they periodically visit the reservation.

On January 3, 2012, the State filed a petition in the juvenile court, alleging that Mischa was a child under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) by reason of her parents' having allowed her and her siblings to have excessive absences and tardies at school over the previous 4 years, jeopardizing Mischa's education and well-being.

The parents entered a no contest admission to the petition, and Mischa was adjudicated on May 8, 2012. She was allowed

to remain at home with her parents under the supervision of the Nebraska Department of Health and Human Services (the Department). The permanency plan has been family preservation. On November 27, the case plan was modified to provide counseling for Mischa.

On January 24, 2013, the guardian ad litem (GAL) filed a motion to remove Mischa from her home due to continued school absences and a failure to participate in counseling as ordered by the court. A hearing was held on February 1, but because there was some question as to whether the tribe had been given proper notice, the hearing on the GAL's motion was continued until February 25, the date of a previously scheduled review hearing. In a journal entry following the February 1 hearing, the juvenile court found that Mischa had continued to incur absences from school and specifically ordered Deanna and Chris to take Mischa to school. The court noted that it had advised Deanna and Chris that they would be subject to actions for contempt if Mischa missed any additional school between February 1 and the hearing scheduled for February 25. The court also noted that Deanna and Chris had advised the court that they were considering an alternative education program for Mischa. The court found that they could continue to pursue alternatives, but that Mischa must attend school until an alternative education plan was created and such plan was determined to be in her best interests. On February 5, the GAL refiled her motion to remove Mischa from the home and notice was provided to all necessary parties.

On February 25, 2013, the juvenile court held a review hearing and heard the GAL's motion to remove Mischa from the family home. The court heard testimony from witnesses and received into evidence various exhibits, including a case plan and progress report dated February 15, a written report from the GAL, and documentation from the school concerning Mischa's absences and tardies.

Melissa Herrmann, the dean of students at the high school where Mischa is a freshman, testified concerning Mischa's school attendance. Mischa missed school from the third day of the school year through Halloween 2012. After she returned,

her attendance improved, and Mischa attended school approximately 2 or 3 days a week for a couple of weeks. In that time, she was able to salvage some of her credits, earning a credit in her geography class and her "foods" class. Around Thanksgiving or early December, her attendance began to drop again. Mischa's attendance did improve somewhat after February 1, 2013. On the first day of school after the February 1 hearing, she missed over half of the day. Between February 1 and 25, Mischa was tardy eight times and absent three times.

As of February 25, 2013, Mischa had missed each of her classes between 60 and 80 times and was significantly behind in her credits for the school year. During this time, her family requested homework for her only twice and Mischa never once returned any homework to the attendance office. Herrmann testified that to stay on track for graduation, a student needed 70 to 80 credits at the end of the freshman year and should have 35 to 40 credits at the end of the first semester. As of the February 25 hearing, Mischa had only 11 credits and was failing all of her classes for the third-quarter term. Herrmann testified that unless Mischa was able to bring up her grades, she would end the third quarter with only 11 credits, when she should have about 60 by that point. Herrmann testified that unless Mischa participated in some extensive summer schooling and online courses to supplement normal coursework, it would be virtually impossible for her to graduate in 4 years at that point in time.

The school has engaged in efforts to get Mischa to attend, including attempting to rearrange her class schedule, offering alternative education, and even considering the possibility of attending school for half days rather than full days. Herrmann testified that "whenever the school has made an attempt to make a concession or to try to get her to come so that we can keep her on track, it always seems to be something else that comes up that prevents her." Excuses given for Mischa's absences have included things such as car troubles, oversleeping, medical appointments, broken glasses, not having the right book or colored pencils for her art class, and not liking her algebra classroom due to a lack of windows.

Herrmann testified that it had been extremely difficult to identify and meet Mischa's needs because the school was being provided with lots of different reasons for her lack of attendance. Herrmann had spoken with Mischa the morning of the February 25, 2013, hearing about the family's application to do home schooling. Mischa informed Herrmann that she thought Deanna had filed the paperwork to begin home schooling. Herrmann had also spoken with Mischa's guidance counselor, who confirmed Mischa's impression, but also expressed concern about whether Deanna had an acceptable curriculum to follow for home schooling.

Herrmann has an undergraduate degree in "7-12 education," has taken college counseling courses, and has a master's degree in educational administration. Her duties at the school include everything from disciplining students and monitoring attendance to evaluating teachers. Herrmann testified regarding whether her education and training had given her the knowledge and experience to identify students struggling emotionally in school. Herrmann testified that a large portion of her day is spent identifying students who are at risk because of things such as attendance or inability to succeed in school for whatever reason. Part of her job as an administrator is to work with those students and their parents, teachers, and counselors as a team to ensure successful graduation from high school.

Collin Baer, a caseworker with the Department, was assigned to the case in November 2012. Baer has provided regular case management and family support services. He has been employed by the Department as a children and family services specialist since July 2012.

Baer testified that family support providers had been going into the home to help the family get ready for school in the morning, keeping track of activities, and then working directly with the schools to keep track of performance and attendance. Family support providers had been going to the home four times a week since the beginning of December 2012 to help with morning routines. Baer noted that there had been some improvement with attendance and tardiness issues corresponding with the provision of family support services. However,

Baer testified that there had been issues with Mischa "getting from the car to the school." Since the beginning of February 2013, the family support worker had been meeting Mischa and Deanna at the school to make sure that Mischa actually arrived, got out of the car, and went into the school. The Department added this service after attendance issues began recurring in January 2013. When the motion for removal was first filed, Baer met with both Mischa and Deanna to discuss what was preventing Mischa from being motivated to go to school. Even when he met privately with Mischa, she provided nothing to indicate what was going on. Baer doubted Mischa would be at school very much, if at all, absent the services being provided by the Department.

Mischa was ordered to attend counseling in November 2012. She went to one appointment that fall and then did not engage in counseling again until late January 2013, at which point the motion for removal had already been filed. At the time of the hearing, the Department had been working with Mischa's counselor, keeping in touch with respect to attendance at counseling sessions and progress made in counseling. For a few weeks prior to the February 25 hearing, family support providers had been responsible for transporting Mischa to counseling on Monday afternoons directly after school. As of the date of the hearing, Mischa had attended two counseling sessions with her current counselor.

As part of Baer's training with the Department, he was trained in ways to determine whether children are abused or neglected and to watch for indicators of emotional and physical well-being. Although his training does not give him "expertise in the field," it allows him to identify when referral to counselors and other experts is necessary. Baer testified that he was not qualified to diagnose, which was why he referred Mischa for counseling.

Baer testified that the Department had made active efforts to prevent Mischa's removal from the home. Baer testified that removal was in Mischa's best interests, not for safety reasons, but because the Department was struggling to come up with other ways to address the issue and actually get Mischa to school. Baer testified that he did not feel that Mischa would

suffer serious physical harm if she remained in the family home, but he did not know whether Mischa would suffer serious emotional damage or other damage if allowed to stay in the home. Baer indicated that the only benefit in removing Mischa would be to ensure that she gets to school and that her educational needs are being met.

In her report, the GAL observed that the family provided a new excuse for Mischa's lack of attendance each time it was discussed. She reported that at the February 1, 2013, hearing, Deanna asserted that Mischa was struggling in school due to "cultural" issues as well as "mental health problems." The GAL expressed her belief that these reasons were "largely excuses as well." The GAL stated:

> I have spoken with these children on numerous occasions, Mischa and [her sister] in particular are adamant that they like their schools and have friends there that they don't want to leave. They have never, on any occasion, cited difficulty fitting in culturally, even when directly asked about such matters. Teachers and counselors report that [they] have seen no signs of bullying, or the like, toward any of the . . . children [in the family]. I do not believe there is a genuine culture issue with this family.

With respect to home schooling for Mischa, the GAL reported that Deanna intended to do so only until the end of the school year and that Mischa wanted to finish the current year at home and return to school the following year.

After the GAL finished presenting evidence in support of the motion, Deanna and Chris' attorney asked the court to dismiss the motion and the juvenile court denied the request.

On February 26, 2013, the juvenile court ordered Mischa to be placed into foster care and the case plan was modified to allow for liberal visitation of Mischa with her family. In reaching this decision, the court noted the parents' argument that Neb. Rev. Stat. § 43-1505(5) (Reissue 2008) provides that foster care placement may not be ordered in the absence of a determination by clear and convincing evidence including testimony of qualified expert witnesses that continued custody by the parent or Indian custodian is likely to result in serious emotional and physical damage to the child. The

court found that serious emotional damage would result to Mischa as a result of insufficient education. The court found, however, that even in the absence of such proof, the statute is unconstitutional as applied in this case, stating that "Indian children are entitled to no less educational opportunity than other children and accordingly, as applied in this particular case, such statute is unconstitutional to the extent that it would deny Mischa educational opportunity even in the absence of serious emotional and physical damage . . . ." The order was silent on whether active efforts had been provided to prevent the breakup of this family. Deanna and Chris subsequently perfected their appeal to this court.

## ASSIGNMENTS OF ERROR

Deanna and Chris assert, renumbered, that the juvenile court erred in (1) finding that there was sufficient expert witness testimony presented under § 43-1505(5), (2) determining that § 43-1505(5) was unconstitutional as applied in this matter, (3) failing to find that active efforts had been made under § 43-1505(4), and (4) denying their motion to dismiss at the close of evidence.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Danaisha W.*, 287 Neb. 27, 840 N.W.2d 533 (2013).

## ANALYSIS

*Mootness.*

[2-5] Before turning our attention to the merits of Deanna and Chris' arguments, we must first address the contention in the joint brief from the State and the GAL that the issue of Mischa's removal from the family home is moot. The State and the GAL assert that Mischa was returned to her home on May 10, 2013, and that thus, the appeal from the removal order is moot. A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome. *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction. *Id*. Under the public interest exception to the mootness doctrine, an appellate court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. *Id*. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. *Id*.

There is no evidence in the record that Mischa has been returned to her home, and even if she has, the application of the Indian Child Welfare Act (ICWA) will continue to be an issue in any further proceedings. As long as Mischa remains under the jurisdiction of the juvenile court, the requirement of findings under § 43-1505 regarding serious emotional or physical damage and the Department's provision of active efforts to prevent the breakup of the Indian family may recur in the future in this case. In addition, guidance on the determination of what constitutes as qualified expert witness testimony and the burden of proving active efforts in ICWA cases would be helpful and causes these issues to be matters of public interest. Thus, we conclude that even if the issues in this appeal are moot, which we need not decide, they should be reviewed. Accordingly, we proceed to address Deanna and Chris' assignments of error.

*Expert Testimony.*

Deanna and Chris assert that the juvenile court erred in finding that there was sufficient expert witness testimony presented under § 43-1505(5). Section 43-1505(5) provides:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

The Nebraska Supreme Court has recognized the existence of guidelines to assist courts in determining whether a witness qualifies as an expert with respect to ICWA. In *In re Interest of C.W. et al.*, 239 Neb. 817, 824, 479 N.W.2d 105, 111 (1992), *overruled on other grounds, In re Interest of Zylena R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), the court noted that the Bureau of Indian Affairs had set forth the following guidelines under which expert witnesses will most likely meet the requirements of ICWA:

"(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.

"(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards in childrearing practices within the Indian child's tribe.

"(iii) A professional person having substantial education and experience in the area of his or her specialty."

Deanna and Chris argue that Baer was not a qualified expert under ICWA. Clearly, there was no evidence that he was a member of the tribe or that he had substantial experience in the delivery of child and family services to Indians. Baer had less than a year of experience in his position with the Department, and there was no testimony about his educational background or any experience he may have had involving Indian children and families. Although Baer was trained in ways to recognize signs of abuse and neglect, including indicators of emotional and physical well-being, he was admittedly not qualified to determine whether serious emotional damage would result if a child is allowed to remain in the family home. See *In re Interest of Shayla H. et al.*, 17 Neb. App. 436, 764 N.W.2d 119 (2009) (Department caseworker with 11 years of experience deemed not qualified expert witness for purposes of ICWA). Even if Baer were qualified as an expert witness, he testified that he did not believe there was a risk of physical harm to Mischa and that he did not

know whether Mischa would suffer emotional damage if left in the home.

Likewise, while Herrmann had substantial education in the area of her specialty of education and administration, she did not establish that she has substantial education and experience which qualifies her to recognize serious emotional damage in a child. Herrmann testified that Mischa is at risk of failing at school due to her attendance problems, but Herrmann did not testify that Mischa will suffer serious emotional damage if she remains in the family home.

Because there was not clear and convincing evidence, including testimony of qualified expert witnesses that continued custody of Mischa by her parents is likely to result in serious emotional damage, the juvenile court erred in finding evidence of emotional damage.

*Constitutionality of § 43-1505(5).*

[6] Deanna and Chris assert that the juvenile court erred in determining that § 43-1505(5) was unconstitutional as applied in this matter. The Nebraska Court of Appeals cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before it, the court does have jurisdiction to determine whether a constitutional question has been properly raised. *Clark v. Tyrrell*, 16 Neb. App. 692, 750 N.W.2d 364 (2008). The question in this case is whether the juvenile court had authority, sua sponte, to determine that § 43-1505(5) was unconstitutional in this case.

In *Sarpy Cty. Farm Bureau v. Learning Community*, 283 Neb. 212, 808 N.W.2d 598 (2012), taxpayers sought a declaration that a levy made and distributed pursuant to certain statutes was unconstitutional. The trial court made this determination, and although not requested to do so, it also determined that certain other statutes were unconstitutional. On appeal, the Nebraska Supreme Court considered whether the trial court erred in making this sua sponte determination. The Supreme Court stated:

> The constitutionality of these statutes was not raised in the complaint. A pleading serves to guide the parties and

the court in the conduct of cases, and thus the issues in a given case are limited to those which are pled. A sua sponte determination by a court of a question not raised by the parties may violate due process.

*Sarpy Cty. Farm Bureau v. Learning Community*, 283 Neb. at 221, 808 N.W.2d at 607. The Supreme Court held that the trial court's sua sponte determination was void and limited its analysis to the constitutionality of the statutes raised in the pleadings.

We likewise conclude that the juvenile court was without authority to determine that § 43-1505(5) was unconstitutional as applied in this matter. The constitutionality of § 43-1505(5) was not raised in the GAL's motion or in any other pleading, nor was it presented to the court during the course of the removal hearing. The juvenile court's sua sponte determination that § 43-1505(5) was unconstitutional as applied in this case was void.

*Active Efforts.*

Deanna and Chris also assert that the juvenile court erred in failing to find that active efforts had been made under § 43-1505(4). Section 43-1505(4) provides:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Referring to the Nebraska Administrative Code, the Nebraska Supreme Court has stated: "[T]he 'active efforts' standard requires more than the 'reasonable efforts' standard that applies in non-ICWA cases. And at least some efforts should be 'culturally relevant.' Even with these guidelines, there is no precise formula for 'active efforts.' Instead, the standard requires a case-by-case analysis." *In re Interest of Walter W.*, 274 Neb. 859, 865, 744 N.W.2d 55, 61 (2008).

[7,8] Before addressing the merits of Deanna and Chris' argument, we first discuss the standard of proof for active

efforts in ICWA adjudication cases. Section 43-247(3)(a) requires that the State prove the allegations set forth in the adjudication petition by a preponderance of the evidence in cases involving both non-Indian and Indian children. *In re Interest of Emma J.*, 18 Neb. App. 389, 782 N.W.2d 330 (2010). With respect to the requirements found in § 43-1505 for adjudicating Indian children, § 43-1505(5) requires that no foster care placement may be ordered without "clear and convincing" evidence of "serious emotional or physical damage." In contrast, § 43-1505(4) does not contain a particular standard for proving active efforts. In *In re Interest of Walter W., supra*, the Nebraska Supreme Court declined to impose a higher standard for active efforts in ICWA termination of parental rights cases than that required under Neb. Rev. Stat. § 43-292 (Reissue 2008). The Supreme Court discussed the federal ICWA statute, stating:

Congress did not intend in 25 U.S.C. § 1912 to create a wholesale substitution of state juvenile proceedings for Indian children. Instead, in § 1912, Congress created additional elements that must be satisfied for some actions but did not require a uniform standard of proof for the separate elements. As discussed, Congress imposed a "beyond a reasonable doubt" standard for the "serious emotional or physical damage" element in parental rights termination cases under § 1912(f). Congress also imposed a "clear and convincing" standard of proof for the "serious emotional or physical damage" element in foster care placements under § 1912(e). The specified standards of proof in subsections § 1912(e) and (f) illustrate that if Congress had intended to impose a heightened standard of proof for the active efforts element in § 1912(d), it would have done so. Because it did not impose a heightened standard of proof, we decline to interpret § 1912(d)—and its Nebraska counterpart, § 43-1505(4)—as requiring the State to prove active efforts beyond a reasonable doubt. Instead, we conclude that the element requires proof by clear and convincing evidence in parental rights termination cases—the

standard required for terminating parental rights under Nebraska law.

*In re Interest of Walter W.*, 274 Neb. at 864-65, 744 N.W.2d at 60-61. We apply that same reasoning here and likewise decline to impose a higher standard for the active efforts element in adjudication cases. We conclude that in adjudication cases, the standard of proof for the active efforts element in § 43-1505(4) is proof by a preponderance of the evidence.

[9] The order of removal entered by the juvenile court did not include an express finding that active efforts have been made to prevent the breakup of this family. However, the court's failure to make such an express finding is not fatal. In a foster care placement determination involving an Indian child, the failure to make findings under § 43-1505(4) is harmless error where a de novo review indicates that evidence supports these findings. See *In re Interest of Enrique P. et al.*, 14 Neb. App. 453, 709 N.W.2d 676 (2006).

In our de novo review of the record concerning the active efforts requirement, we note that Baer testified that the Department had made active efforts to prevent removal in this case, which efforts included helping the family get ready in the morning, meeting Mischa and Deanna at school, and escorting Mischa into the school if needed. The school was also working with the family to improve Mischa's attendance. In addition, the Department had set up counseling for Mischa to attempt to resolve the school problem. Baer testified that there was nothing else that could be done at that point except removal of Mischa from the home to attempt to correct the attendance and education problems. We agree that these efforts had been unsuccessful to resolve the education problems at the time of the hearing. On the other hand, there was evidence that the family was looking into home schooling for Mischa, which option had not been thoroughly explored at the time of the removal hearing.

We conclude there was a preponderance of evidence that the Department had made active efforts to provide remedial services to the family to ensure school attendance by Mischa but that such efforts had proved unsuccessful as of the time of the hearing.

*Motion to Dismiss.*

[10] Deanna and Chris assert that the juvenile court erred in denying their motion to dismiss at the close of evidence. Because we are reversing the order of removal by the juvenile court due to insufficient evidence of serious emotional damage, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

## CONCLUSION

The juvenile court's sua sponte determination that § 43-1505(5) was unconstitutional as applied in this case was void. The court's failure to make an express finding with respect to active efforts is not fatal because in our de novo review, we find a preponderance of evidence that the Department had made active efforts which had proved unsuccessful as of the time of the hearing. However, the juvenile court erred in finding evidence of emotional damage under § 43-1505(5). Accordingly, we reverse, and remand for further proceedings.

Reversed and remanded for further proceedings.